IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:13-CV-259-D

| | | |
|---|---|---|
| DARLENE THORNE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Darlene Thorne Williams ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 21, 23). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 25). The motions have been fully briefed.[2] For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[2] Each party filed a memorandum in support of its motion. (D.E. 21-1, 24).

## I. BACKGROUND

### A. Case History

Plaintiff filed applications for DIB and SSI on 2 September 2009 alleging a disability onset date of 1 April 2005. Transcript of Proceedings ("Tr.") 13. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 13. On 23 May 2012, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff, plaintiff's sister, and a vocational expert testified. Tr. 13, 29-81. The ALJ issued a decision denying plaintiff's claim on 24 September 2012. Tr. 13-23. Plaintiff timely requested review by the Appeals Council. Tr. 8-9. The Appeals Council admitted additional evidence (Tr. 731),[3] but on 9 October 2013 denied the request for review (Tr. 1-6). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 18 December 2013, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[3] The Appeals Council considered other evidence submitted by plaintiff as well, but returned it to her because the records concerned the time period following the ALJ's decision. Tr. 2.

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings ["Listings"] in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.* §§ 404.1523, 416.923.

## C.     Findings of the ALJ

Plaintiff was 36 years old on the alleged onset date of disability and 43 years old on the date of the hearing. Tr. 21 ¶ 7. She has at least a high school education and past relevant work as a machine operator, sales clerk, paper sorter, binder, key cutter, sales attendant, and hand packager. Tr. 21 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 15 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairment that was severe within the meaning of the Regulations: schizoaffective disorder. Tr. 15 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 16 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a full range of work at all exertional levels subject to the following non-exertional limitations: "the claimant can perform

simple, routine, repetitive tasks ["SRRTs"]. She can occasionally interact with co-workers, supervisors, and the general public. She cannot perform fast paced or quota based work." Tr. 17 ¶ 5.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 21 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of housekeeping cleaner, kitchen helper, and hospital cleaner. Tr. 22 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 22 ¶ 11.

### D. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir.

1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

II.   **OVERVIEW OF PLAINTIFF'S CONTENTIONS**

Plaintiff argues that the case should be remanded for the award of benefits or, in the alternative, a new hearing, on the principal grounds that the ALJ erred by improperly determining: (1) that plaintiff did not meet Listing 12.03 for schizophrenic, paranoid, and other

psychotic disorders; and (2) that she had the RFC to perform unskilled work. Each of these grounds is addressed in turn below.

## III. DISCUSSION

### A. The ALJ's Listing Determination

#### 1. Applicable Legal Principles

The Listings describe impairments, organized into sections corresponding to major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). If a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing and the claimant thereby deemed to be disabled if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1520(d), 404.1525(c)(5), 416.920(d), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

Listing 12.03 provides, in pertinent part,[4] as follows:

12.03 Schizophrenic, Paranoid and Other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .

 A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
  1. Delusions or hallucinations; or
  2. Catatonic or other grossly disorganized behavior; or
  3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
   a. Blunt affect; or
   b. Flat affect; or
   c. Inappropriate affect; or
  4. Emotional withdrawal and/or isolation;

AND

 B. Resulting in at least two of the following:
  1. Marked restriction of activities of daily living; or
  2. Marked difficulties in maintaining social functioning; or
  3. Marked difficulties in maintaining concentration, persistence, or pace; or
  4. Repeated episodes of decompensation, each of extended duration;

Listing 12.03.

### 2. The ALJ's Determination Regarding Listing 12.03

The ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Tr. 16 ¶ 4. With respect to Listing 12.03, the ALJ found that plaintiff did not satisfy the paragraph B criteria. Specifically, she found that plaintiff had only mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in

---

[4] Listing 12.03 includes paragraph C criteria which, if satisfied, establish the level of severity required by the Listing, but plaintiff did not challenge the ALJ's determination that she did not satisfy those criteria. *See* Tr. 17 ¶ 4.

maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Tr. 16-17 ¶ 4. She therefore concluded that "[b]ecause the claimant's mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." Tr. 17 ¶ 4.

### 3. Analysis

Plaintiff contends that the ALJ erred by not finding plaintiff to have marked difficulties in maintaining social functioning and concentration, persistence, or pace and thereby not finding plaintiff to satisfy Listing 12.03. The court finds no error.

The ALJ explained her rulings regarding social functioning and concentration, persistence, or pace as follows:

> In social functioning, the claimant has moderate difficulties. The claimant stated that she is not very social. (Exhibit 3E p. 6). However, the claimant's sister stated that with encouragement, the claimant would go places. (Exhibit 4E p. 6). The claimant was able to go to the grocery store once a week for 30 minutes. (Exhibit 3E p. 4). She talked to her sister and niece on the phone regularly and went to her brother and sister's houses to visit. (Exhibits 4E p. 5; 9E p. 5).
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Although the claimant alleged that she had difficulty concentrating due to racing thoughts, hallucinations, and low energy, the claimant was able to drive, watch television, and handle her own finances, which are activities that require concentration. (Exhibits 3E pp. 4; Hearing Testimony). She needed reminders to go places. (Exhibit 4E p. 5). The claimant's sister encourages her to keep her house clean. (Exhibit 4E p. 3). Although she reported to the State agency that she did not handle stress well, she stated that she could follow spoken and written directions well (Exhibit 3E pp. 5-6; 4E p. 6). Additionally, the claimant was able to help her daughter with her homework. (Exhibit 4E p. 1).

Tr. 16-17 ¶ 4. Substantial evidence supports the reasons cited by the ALJ, including the evidence discussed by her.

The ALJ's analysis of the opinion evidence in the RFC analysis provides further insight into her determination on the paragraph B criteria of social functioning and concentration, persistence, or pace.[5] The ALJ stated in relevant part:

> On March 25, 2010 and November 29, 2010, at the initial and reconsideration levels respectively, State agency psychological consultants Walter Scarborough, M.D., and Ken Wilson, Psy.D., concluded that the claimant could perform [SRRTs] in a setting that did not require extensive social contact and that was relatively stable. (Exhibits 15F; 20F). The State agency psychological consultants' mental assessments are given significant weight because they are consistent with the claimant's sporadic and noncompliant treatment history and clinical findings related to the periods when she was compliant with treatment.

Tr. 20 ¶ 5. Notably, consistent with the ALJ's findings, both Dr. Scarborough and Dr. Wilson found plaintiff to have no marked limitations in areas relating to either social functioning or concentration, persistence, or pace. Tr. 603-04, 670-71.

In contrast to the foregoing opinions, the ALJ gave no weight to the 14 March 2012 opinion of social worker Crystal Briant that plaintiff had marked difficulties in social functioning and concentration, persistence, or pace and, therefore, meets the criteria for Listing 12.03. Tr. 697-98. The ALJ explained as follows:

> Although Ms. Briant as a social worker is not an "acceptable medical source" for purposes of diagnosing medical conditions, her opinion can be given weight as to the severity and extent of the claimant's limitations. (Social Security Ruling 06-3p). In the instant case, Ms. Briant's assessment is given no weight because there are no treatment notes in the record from Ms. Briant. Moreover, her assessment regarding the claimant's limitations is inconsistent with the medical evidence.

Tr. 20 ¶ 5.

---

[5] The fact that the reasons underlying an ALJ's listing determination are not all set out at step three of the sequential analysis does not constitute legal error where the decision read as a whole makes them clear. *See, e.g., Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *1 (4th Cir. 14 Dec. 2011); *Lydia v. Astrue*, No. 2:11-1453-DCN-BHH, 2012 WL 3304107, at *5 (D.S.C. 25 Jul. 2012) ("This sort of deconstruction of the ALJ's decision[ ] is not useful. The ALJ's decision must be read as a whole."), *report and recomm. adopted by* 2012 WL 3308108, at *1 (13 Aug. 2012); *Finley v. Astrue*, No. 5:08-CV-209-D(l), 2009 WL 2489264, at *5 (E.D.N.C.) ("[T]he ALJ's decision may appropriately be read 'as a whole.'" (quoting *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3rd Cir. 2004))), *mem. and recomm. accepted by* 2009 WL 2489264, at *1 (13 Aug. 2009).

Plaintiff does not challenge the ALJ's assessment of the foregoing opinion evidence, and the court finds that the ALJ's assessments are themselves supported by substantial evidence and conform to the applicable legal standards. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); Soc. Sec. R. 96-6p, 1996 WL 374180 (2 July 1996).

In support of her argument that her difficulties in social functioning and concentration, persistence, or pace were at the marked level, plaintiff states in cursory fashion the following:

> Ms. Williams' condition is characterized by hallucinations and blunt affect. She has had years of treatment but still has symptoms. As a result she has marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence or pace.
>
> The medical evidence supports a finding that her impairment meets or medically equals [Listing 12.03]. Ms. Williams has been admitted to Coastal Plain Hospital on multiple occasions. On June 30, 2011 she was admitted due to suicidal ideation. She admitted to hearing voices that told her to hurt herself. She had prior hospitalizations for the same complaints. Ms. Williams is still involved in therapy to learn how to cope with depression and financial difficulty.

(Plf.'s Mem. 9-10). It is apparent from the ALJ's decision that she considered all of the facts recited by plaintiff. *See* Tr. 18-20 ¶ 5. They clearly do not mandate a finding of marked difficulties in social functioning or concentration, persistence, or pace, particularly when considered with the other evidence of record, as they must be.

Moreover, plaintiff's argument, such as it is, has failed to recognize the most significant aspect of the ALJ's determination–that plaintiff's mental impairment is not disabling when she is compliant with treatment. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *Forbes v. Colvin*, No. 4:12-CV-211-FL, 2013 WL 4759086, at *10 (E.D.N.C. 23 July 2013) (finding claimant's depression reasonably controlled with medication), *mem. & recomm. adopted by* 2013 WL 4759086, at *3 (4 Sept. 2013). After thoroughly discussing plaintiff's medical records, including

the psychiatric inpatient treatment she received during each of her periods of decompensation, the ALJ explained:

> In sum, the claimant has a long history of noncompliance with treatment. During periods of noncompliance, the medical records show [that] the claimant[] decompensates. However, the records also show that her symptoms quickly respond to treatment. Despite episodes of exacerbation of her condition, the claimant was able to live independently, manage money, and maintain custody of her daughter. Moreover, at the hearing, both [claimant's sister] and the claimant testified that the claimant could perform a simple job in a low stress work environment.

Tr. 20 ¶ 5.

Substantial evidence supports these findings, including the evidence discussed by the ALJ in the decision. In particular, and as described in detail by the ALJ, the evidence shows that the level of plaintiff's functioning was significantly improved each time her medication regimen was reestablished following a period of noncompliance. When treated, plaintiff's GAF (*i.e.*, Global Assessment of Functioning)[6] scores ranged from 60 to 70, indicating mild (GAF scores

---

[6] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

> 90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).
>
> 80-71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).
>
> 70-61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.
>
> 60-51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
>
> 50-41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

of 61-70) to moderate (GAF scores of 51-60) limitations in functioning, which is most apparent in the records of her psychiatric inpatient treatment. *See, e.g.*, Tr. 426-27 (July 2005: discharged with GAF score of 65 following treatment with medication); Tr. 448-49 (Sept. 2005: admitted with GAF score of 30 and discharged with GAF score of 65 following resumption of medication regimen); Tr. 518-19 (Dec. 2006: admitted with GAF score of 35 and discharged with GAF score of 65 after responding "fairly quickly" to medication); Tr. 716-19 (June 2011: admitted with GAF score of 35, symptoms resolved after change in medication regimen, and discharged with GAF score of 70).

For the foregoing reasons, the court concludes that the ALJ's determination that plaintiff did not meet or medically equal the paragraph B criteria of Listing 12.03 and therefore that she did not meet or medically equal that listing is supported by substantial evidence and based on the proper legal standards.

### B. The ALJ's RFC Determination

Plaintiff argues that her mental impairment and the side effects of her medication deprive her of the capacity to perform unskilled work. The entirety of plaintiff's argument consists of the following:

> [Plaintiff] would have extreme difficulty dealing with changes in a routine work setting. She does not have the ability to respond to typical work stress or respond to interruptions or changes in the work routine.

---

40 -31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34.

> . . . .
>
> [Plaintiff] is unable to maintain concentration for two hour segments. Her ability to focus is significantly limited by her mental impairment and side effects from medication.

(Plf.'s Mem. 11-12). In support of her argument, she cites to only her testimony at the hearing:

> She testified that she had racing thoughts and auditory hallucinations. (T p. 35) Ms. Williams testified that for the period of time she did not get treatment she was without Medicaid or any other type of insurance. Without treatment she heard even more voices. (T p. 36-37) She has difficulty with comprehension. When she goes to the doctor she may ask the same question several times. (T p. 38) Ms. Williams admitted to depression, low energy and mood swings. (T pp. 39-40) She testified that she had difficulty doing even simple tasks while at work and needed constant supervision. (T pp. 59-60)

(Plf.'s Mem. 11). The evidence previously reviewed regarding plaintiff's mental impairment comprises substantial evidence supporting the ALJ's determination that plaintiff can perform unskilled work despite the mental limitations she cites. The propriety of the RFC determination in this regard is reinforced by the ALJ's inclusion in it of restrictions accommodating these limitations, namely, restriction to SRRTs and no fast paced or quota-based work. Tr. 17 ¶ 5.

Moreover, plaintiff relies exclusively on her own testimony in support of her argument. But the ALJ found that although "the claimant's medically determinable impairments could reasonably he expected to cause the alleged symptoms; . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." Tr. 18 ¶ 5. Plaintiff does not directly challenge this determination. The court finds that it complies with applicable legal standards and is supported by substantial evidence, including the evidence discussed above. *See Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. R. 96-7p, 1996 WL 374186, at *1 n.1, *2 (2 July 1996).

Plaintiff also summarily asserts without argument or citation to supporting evidence that the side effects of her medication, which she does not specifically identify, limit her ability to do unskilled work. However, aside from her own testimony at the hearing that her medications cause "[d]rowsiness, dry mouth, [and] headaches" (Tr. 57), her medical records contain substantial evidence that she has not experienced any side effects. *See, e.g.*, Tr. 449 ("Patient did not exhibit any side effects from her medications."); Tr. 612 ("[Plaintiff] is reporting no side reactions to current medication regimen."); Tr. 644 ("[Plaintiff] describes no side effects and none are in evidence."). Accordingly, this argument is without merit.

Finally, plaintiff states that the times when she did not seek treatment correspond with times when she did not have Medicaid or other health insurance, citing to her hearing testimony that she had a lapse in her Medicaid coverage for some period of time prior to 2010. Tr. 36-37. To the extent that she is suggesting that her medication noncompliance was related to a lack of financial resources, *see Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) ("[A] claimant may not be penalized for not seeking treatment she cannot afford."), plaintiff has not cited to, nor does the court find, evidence in the record to support this contention. The court notes, however, that plaintiff apparently did have Medicaid coverage at some point in 2005 (Tr. 516 (19 Oct. 2005 treatment record of psychiatrist noting that plaintiff "now has Medicaid")) and yet was hospitalized twice in 2005 after stopping her medication. *See* Tr. 408, 448. This evidence undermines the notion that plaintiff is only noncompliant when she is without Medicaid coverage.

For the reasons discussed, the court concludes that the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to it.

## IV. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 23) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 21) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 27 January 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 13th day of January 2015.

_____
James E. Gates
United States Magistrate Judge